912 F.2d 466
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
OWENS-CORNING FIBERGLAS CORP., Plaintiff-Appellee,
v.
KNAUF FIBER GLASS GmhH, Defendant-Appellant,
Max G. HERSCHLER, Defendant.
 No. 89-3280.
 United States Court of Appeals, Sixth Circuit.
 Aug. 27, 1990.
 
 Before KEITH and RALPH B. GUY, Jr., Circuit Judges, and ENSLEN, District Judge.*
 GUY, Circuit Judge.
 
 
 1
 Knauf Fiber Glass GmbH ("Knauf") appeals from an order granting Owens-Corning Fiberglas Corporation ("OCF") limited relief from a protective order. We review such orders under an abuse of discretion standard. Krause v. Rhodes, 671 F.2d 212, 218-19 (6th Cir.), cert. denied, 459 U.S. 823 (1982). Finding that the district judge properly exercised his discretion, we affirm.
 
 I.
 
 2
 Defendant, Max G. Herschler, after working in a sensitive position with OCF for a number of years, left to become an employee of Knauf. Knauf is a competitor of OCF in the glass fiber wool insulation products market. Fearful that Herschler would divulge trade secrets, OCF instituted this action. Shortly after suit was started and to facilitate discovery, the parties stipulated to a protective order to guard against the disclosure of trade secrets or other confidential information. Among other things, the protective order provided that:
 
 
 3
 1. It is anticipated that some information supplied in the course of discovery in this action may be confidential information of the type recognized by Federal Rules of Civil Procedure. Either party or any nonparty that produces information which is reasonably believed by it to be the type so recognized may, at the time of production, designate such information in writing as "Confidential" or "Attorneys Eyes Only" and the information so designated shall thereafter be subject to the provisions of this Stipulation and Order....
 
 
 4
 .............................................................
 
 
 5
 ...................
 
 
 6
 * * *
 
 
 7
 4. Parties or persons supplying information during discovery reserve the right to designate as "Attorneys Eyes Only" any materials, documents, or other information which, because of their particular significance to the party or person producing them will be subject to particularly strict constraints to insure their confidentiality. Any such documents, materials, or other information designated "Attorneys Eyes Only" shall be maintained under strict confidence by counsel for the parties herein and shall be disclosed only to the following named attorneys and their support staff as described below, except upon the prior written consent of the party or persons producing the information or subsequent order of Court. Each aforesaid party or person reserves the right to seek further protective orders or relief from any protective order by application to this Court in connection with any documents and the information contained therein....
 
 
 8
 During the course of discovery, counsel for OCF took the deposition of Peter Dunkailo, a Knauf employee. At the request of Knauf, information received from Dunkailo was designated "Attorneys Eyes Only." In the course of questioning Dunkailo, OCF counsel developed the fact that among the Knauf production lines was line 605, which used spinners oriented at an angle to the horizontal for projecting veils of attenuated fibers onto a moving collecting conveyor with air jets below the spinners to distribute the fibers lengthwise and transversely of the moving conveyor. This disclosure caught the attention of OCF counsel, since OCF is the owner of patent 3,865,566 ("566 patent"), which claims proprietary ownership of a method using a spinner positioned at an angle to the horizontal for producing and collecting fiberglass fiber. In the opinion of counsel for OCF, the Knauf process infringed the 566 patent. Due to the protective order, counsel could not make these facts known to OCF management.
 
 
 9
 Two months after this litigation was instituted and after some discovery was taken, the parties reached a settlement, and a stipulated judgment was entered by the court. Although no trade secrets were found to have been disclosed by Herschler, the judgment did specifically state that Herschler possessed considerable knowledge of valuable OCF trade secrets which could be of value to Knauf, and that Herschler was forbidden to disclose such information. To ensure that there were no future disclosures, the judgment also provided that:
 
 
 10
 It is the declaration of this Court, binding upon the parties OCF and Herschler only, that Herschler shall be available on a mutually agreeable date and location in Indianapolis, Indiana, on an annual basis for a period of three years commencing with the anniversary date of this Judgment Entry in 1987, 1988, and 1989 to be deposed by OCF for the limited purpose of determining what, if any, disclosure and/or use, as the case may be, of matters contained in Exhibit A Herschler may have made in contravention of Exhibit A.
 
 
 11
 Some six to seven months subsequent to the case being settled, OCF amicably settled an infringement matter with Knauf involving OCF patent 3,582,421. In the course of resolving this matter, OCF requested that Knauf also investigate the infringement of the 566 patent and give OCF counsel permission to divulge to OCF management the facts which had been developed in the Dunkailo deposition. When Knauf refused, OCF filed a motion for limited relief from the earlier protective order.
 
 
 12
 The district court referred the matter to a magistrate who recommended that the relief be granted. Knauf filed objections to the magistrate's report and recommendation. Although the district judge found some of the objections to be well taken, he nonetheless concluded, as did the magistrate, that relief was appropriate. Knauf applied for a stay in the district court and in this court, both of which applications were denied. After the initial order had been entered granting limited relief from the protective order, but prior to any request for a stay, counsel for OCF divulged the 566 patent information to OCF management and an infringement suit against Knauf quickly followed.
 
 II.
 
 13
 Although this case presents a fascinating, behind-the-scenes glimpse into the world of complex, high tech, corporate technology, the legal issue presented is a simple one. Each of the parties makes a number of arguments on appeal, but the only one we need address is whether the district judge abused his discretion when he granted limited relief from the protective order. In order to answer that question, we must examine the rationale underlying the district court's conclusion. Under the terms of the stipulated protective order, the district court was to resolve any disputes that might arise as to what was properly covered by the order. Information developed--even though damaging, embarrassing, or prejudicial to one of the parties--was not protected unless it was a trade secret or something akin thereto. The court concluded that the information relative to Knauf using spinners oriented at an angle to the horizontal could not be a trade secret of Knauf since this process was described and arguably covered by the OCF 566 patent. The court reasoned that patent information is, by its nature, public information. Although it was the revelation of information not previously known to OCF that this process was being used on Knauf production line 605, this "secret" was not a trade secret. Furthermore, to the degree that the 566 patent infringement claim is but an allegation denied by Knauf at this juncture, any further probing on the part of OCF can be regulated by appropriate protective orders in the 566 patent infringement suit.
 
 
 14
 It is certainly possible that parties could enter into a stipulated protective order that would, at least initially, embargo all information developed, regardless of its nature. That was not done here. Even were the parties to so stipulate, the court would retain the ultimate control over the construction and outer limits of the order.
 
 III.
 
 15
 Knauf also argues that it was denied due process when it was not given an evidentiary hearing on the motion for relief from the protective order. We find no merit to this argument for two reasons. First, Knauf does not indicate what further relevant information an evidentiary hearing would have developed. Second, both the magistrate and the district judge, in his de novo review, gave this matter very careful consideration. They had all that they needed before them to make a proper determination.
 
 
 16
 The final argument pressed by Knauf is that OCF should be barred by laches from seeking relief from a protective order one year after the underlying litigation was settled by the entry of a stipulated judgment. There are several problems with this argument. To begin with, one year is much shorter than the time span usually discussed when laches are implicated. Additionally, counsel for OCF have offered a reasonable explanation for the delay. Furthermore, although a stipulated judgment was entered, the original case is still ongoing due to the judgment providing for the taking of depositions of Dunkailo annually for a period of three years.
 
 
 17
 What appears to be the real burr under Knauf's saddle is its suggestion that if it knew OCF was going to start an infringement suit against it, it might not have entered into a stipulated judgment in this matter. Whether this is true or not has little bearing on the protective order issue. It also appears that, apart from any subsequent infringement suit, Knauf had as much to gain by an amicable resolution of this litigation as did OCF.
 
 
 18
 AFFIRMED.
 
 
 
 *
 The Honorable Richard A. Enslen, United States District Court for the Western District of Michigan, sitting by designation